UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 2:23-CR-00185-01 |
| | * | |
| VERSUS | * | JUDGE CAIN |
| | * | |
| BRENDAN DELAFOSE | * | MAGISTRATE JUDGE KAY |

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS THE INDICTMENT

The Second Amendment confers a second-class right no longer. New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 142 S. Ct. 2111, 2156 (2022). Post-Bruen, litigation abounds challenging 18 U.S.C. § 922 firearm possession charges.[1] In Range v. Attorney General, 69 F.4th 96 (3rd Cir. June 6, 2023), a divided en banc Third Circuit held § 922(g)(1) (possession of a firearm by a convicted felon) unconstitutional as applied to Mr. Range, and in United States v. Jessie Bullock, 2023 WL 4232309 (S.D. Miss. June 28, 2023), Judge Carlton Reeves held it unconstitutional as applied to Mr. Bullock. Section 922(g)(1)'s validity post-Bruen is currently before the Fifth Circuit in United States v. Jeroswaski Collette, No. 22-51062, though the Fifth Circuit has put the case in abeyance pending the U.S. Supreme Court's decision in Rahimi.

---

[1] For just a couple examples from this Circuit, see United States v. Rahimi, 61 F.4th 443 (5th Cir. 2023) (sustaining a facial challenge to and invalidating 18 U.S.C. § 922(g)(8), *cert granted* June 30, 2023 (No. 22-915), and United States v. Patrick Daniels, Jr., 22-60596 (5th Cir. August 9, 2023) (sustaining an as-applied challenge to 18 U.S.C. § 922(g)(3)).

1

## BACKGROUND

By August 16, 2023, indictment, the government charged Brendan Delafose with one count of possessing a firearm as a convicted felon in violation of 18 U.S.C. § 922(g)(1) and one count of illegally possessing a machine gun in violation of 18 U.S.C. § 922(o). Briefly, a Calcasieu Parish Sheriff's Officer stopped the car Mr. Delafose was driving for a traffic violation and claimed to smell marijuana coming from the car. Based on the smell of marijuana, the officer searched the car and found, under the driver's seat, a Glock 9mm handgun that had attached to it a device that functioned to convert the semiautomatic handgun to fire automatically, rendering it a machinegun under federal law. Mr. Delafose was previously convicted of possessing Xanax in 2018, a nonviolent felony offense, for which he successfully completed a 2-year probation sentence. That charge is Mr. Delafose's only conviction.

## LAW

In 2022, the Supreme Court initiated a sea change in Second Amendment jurisprudence. It decided Bruen, 142 S. Ct. 2111, sweeping away the prior means-end scrutiny courts had used in Second Amendment cases and replacing it with a test based on historical tradition. It said that firearm restrictions are now presumptively unlawful unless the government can "demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." Bruen, 142 S. Ct. at 2126.[2]

---

[2] In a District of Columbia v. Heller footnote, Justice Scalia made the passing note that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial

2

"The distinction between as-applied and facial challenges is sometimes hazy," U.S. v. Perez, 43 F.4th 437, 443 (5th Cir. 2022) (citation omitted), but as-applied challenges "'are the basic building blocks of constitutional adjudication,'" Bullock, 2023 WL 4232309 at *5 (quoting Richard H. Fallon, Jr., As-Applied and Facial Challenges and Third-Party Standing, 113 HARV. L. REV. 1321, 1328 (2000)). In an as-applied challenge, the court examines whether a law may have some permissible uses but "is nonetheless unconstitutional as applied to the [defendant's] activity," Spence v. Washington, 418 U.S. 405, 414 (1974); see Street v. New York, 394 U.S. 576, 594 (1969). In contrast, a facial challenge asks the court whether a law could ever be applied in a constitutional manner. Members of City Council of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 798 (1984). For efficiency purposes and for reasons related to proper court functioning, the lawfulness of a law's particular application should ordinarily be decided first, Bd. of Trustees of State Univ. of New York v. Fox, 492 U.S. 469, 485 (1985), but, once a case is brought, there is no categorical bar that prevents a court from making a broader pronouncement of

---

sale of arms." District of Columbia v. Heller, 554 U.S. 570, 626–27 & n.26 (2008). Justice Kavanaugh reiterated that dicta in Bruen, 142 S. Ct. at 2162 (Kavanaugh, J., joined by Roberts, C.J., concurring). Several circuits, including the Fifth, have already described this language in Heller as dicta. See U.S. v. Scroggins, 599 F.3d 433, 451 (5th Cir. 2010); Tyler v. Hillsdale Cty. Sheriff's Dep't, 837 F.3d 678, 686–87 (6th Cir. 2016) (en banc); and U.S. v. Williams, 616 F.3d 685, 692 (7th Cir. 2010).
  Should the government in defense cling to this footnote, dicta does not control the outcome of this case. Bruen's holding controls: that when the Second Amendment's plain text protects an individual's conduct a law prohibiting the conduct is presumptively unlawful and the government must then demonstrate that the law is consistent with the Nation's historical tradition of firearms regulation. See Heller, 554 U.S. at 625 n.25 ("It is inconceivable that we would rest our interpretation of the basic meaning of any guarantee of the Bill of Rights upon such a footnoted dictum in a case where the point was not at issue and was not argued.").

invalidity in proper "as-applied" cases, Citizens United v. Fed. Election Comm'n, 558 U.S. 310, 331 (2010) (citing Fallon, 113 HARV. L. REV. at 1339).

## ARGUMENT

1. **Title 18, U.S.C. §§ 922(g)(1) and 922(o) are unconstitutional because the Second Amendment's plain text covers firearms possession and the government cannot demonstrate that their restrictions are consistent with the Nation's historical tradition of firearms regulation.**

    **A. First, the Constitution presumptively protects firearms possession because the Second Amendment's plain text protects that conduct.**

To start, 922(g)(1) and 922(o) are presumptively unlawful because the Second Amendment's plain text covers firearms possession.[3] The amendment's term "'[k]eep arms' was simply a common way of referring to possessing arms" at the time of ratification. Heller, 554 U.S. at 583. The right to keep and bear arms applies to "all Americans." Bruen, 142 S. Ct. at 2156; Heller, 554 U.S. at 581.

Mr. Delafose is an American and a member of "the people" for which the right to keep (possess) and bear arms shall not be abridged. The Second Amendment presumptively protects his firearms possession, and 922(g)(1) and 922(o) are presumptively unlawful.

---

[3] Importantly, Heller rejected the idea that only those arms in existence in the 18th century are protected by the Second Amendment, calling the argument "bordering on the frivolous." 554 U.S. 570, 582. The Court held,
> We do not interpret constitutional rights that way. Just as the First Amendment protects modern forms of communications, and the Fourth Amendment applies to modern forms of search, the Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding.

Id. (internal citations omitted). Thus, that machineguns did not exist at the Second Amendment's ratification is not fatal to the claim that 18 U.S.C. § 922(o) is unconstitutional; the Second Amendment protects the rights of Americans to possess machineguns as it does any other bearable arm.

4

### B. Second, 18 U.S.C. §§ 922(g)(1) and 922(o) are unconstitutional because the government cannot demonstrate that their restrictions on firearms possession is consistent with the Nation's historical tradition of firearms regulation.

Having found that the Second Amendment's plain text protects Mr. Delafose's firearms possession, the burden shifts to the government to show that 922(g)(1) and 922(o) comport with the Nation's historical tradition of firearms regulation.

The Fifth Circuit has already noted that 922(g)(1) bears little resemblance to laws in effect at the time of its ratification. It said:

> [T]he federal felony firearm possession ban, 18 U.S.C. § 922(g)(1), 'bears little resemblance to laws in effect at the time the Second Amendment was ratified,' as it was not enacted until 1938, was not expanded to cover non-violent felonies until 1961, and was not re-focused from receipt to possession until 1968.

National Rifle Ass'n of America, Inc. v. Bureau of Alcohol, Tobacco, Firearms, and Explosives, 700 F.3d 185 (5th Cir. 2012), *abrogated by* Bruen, 142 S. Ct. 2111, (quoting U.S. v. Booker, 644 F.3d 12, 23–4 (1st Cir. 2011)).

Likewise, then-Judge and now-Justice Barrett, sitting on the Seventh Circuit, concluded that "[f]ounding-era legislatures did not strip felons of the right to bear arms simply because of their status as felons." Kanter v. Barr, 919 F.3d 437, 451 (7th Cir. 2019) (Barrett, J., dissenting); see also e.g., Folajtar v. Att'y Gen. of U.S., 980 F.3d 897, 914 (3rd Cir. 2020) (Bibas, J., dissenting) ("[T]he issue of disarming felons is open. Precedent does not settle its historical limits. Rather, we must analyze the history ourselves and ask: Were all felons, dangerous and nondangerous alike, equally excluded from the Second Amendment? No, they were not."); U.S. v. McCane,

5

573 F.3d 1037, 1048 (10th Cir. 2009) (Tymkovich, K., concurring) ("[M]ore recent authorities have *not* found evidence of longstanding dispossession laws.").

In Kanter, Judge Barrett performed an exhaustive historical analysis, finding no founding-era law explicitly imposing or authorizing legislative imposition of permanent felon disarmament in the state ratification conventions of several states. Id. at 454–56 (examining the ratification conventions of New Hampshire, Massachusetts, and Pennsylvania). She then turned to English common law and colonial American history, finding race-based disarmament against Catholics, Native Americans, and African-Americans, but no categorical disarmaments of persons with felony convictions. Id. at 456–58. She then considered and rejected the argument that felon disarmament laws are constitutional because founding-era felonies were punishable by death, noting that by the time of ratification the death penalty no longer inevitably followed a felony conviction, and "civil death" (even then a more modest version than the ancient version as the new version retained some rights) applied exclusively to life sentences and only if statutorily authorized. Id. at 459–61. Judge Barrett also considered and rejected the "virtuous citizenry" theory, in which gun rights extend only to the virtuous, because while certain rights—the right to vote or serve on a jury for example—could be curtailed on the basis of this theory, those exclusions only applied to "civic" rights that require citizens to act collectively. Id. at 463. Heller made clear, she noted, that the Second Amendment's right to keep and bear arms is an individual, not civic, right. Id.

6

Scholars, too, have reached the conclusion that no colonial or state law from eighteenth-century America formally mandated felony disarmament. See, e.g., C. Kevin Marshall, Why Can't Martha Stewart Have A Gun?, 32 HARV. J.L. & PUB. POL'Y 695, 698 (2009) (observing that such prohibitions have their origins in the twentieth century); Carlton F.W. Larson, Four Exceptions in Search of A Theory: District of Columbia v. Heller and Judicial Ipse Dixit, 60 HASTINGS L.J. 1371, 1376–80 (2009) (showing that a strictly originalist argument for Heller's examples—including bans on firearm possession by felons and the mentally ill, and laws imposing conditions on commercial arms sales—is difficult to make).

Felony-based disarmament is a twentieth-century invention. Felony disarmament of individuals convicted of non-violent felonies (a category that includes Mr. Delafose) is an even more recent invention, occurring in the latter half of the twentieth century. Put simply, the government cannot provide the historical analogues to show that felony disarmament comports with the Nation's historical tradition of firearms regulation. For that reason, 18 U.S.C. §§ 922(g)(1) and 922(o) are unconstitutional under Bruen.

## CONCLUSION

Title 18, U.S.C. §§ 922(g)(1) and 922(o) are unconstitutional facially and as applied to Mr. Delafose because the Second Amendment's plain text protects firearms possession, and the government cannot show that they are consistent with the Nation's historical tradition of firearms regulation. The indictment should be dismissed.

RESPECTFULLY SUBMITTED,

REBECCA L. HUDSMITH
FEDERAL PUBLIC DEFENDER FOR THE
MIDDLE & WESTERN DISTRICTS OF LOUISIANA

BY:   **S/ AARON A. ADAMS**
Louisiana Bar No. 37006
Assistant Federal Public Defender
102 Versailles Blvd., Suite 816
Lafayette, Louisiana 70501
(337)262-6336 (Phone) (337)262-6605 (Fax)
Aaron_Adams@fd.org

Counsel for Brendan Delafose